## NEFTELBERGER v. GARNER.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

BROKERS—PERFORMANCE OF COMMISSION—RIGHT TO COMPENSATION.

Where defendant employed a broker to obtain a loan for him on a second mortgage on certain real estate, and the broker secured a person ready, able, and willing to make the loan, and defendant, when the transaction was to be closed, either refused or was unable to satisfy existing liens against the property other than the first mortgage, which was a necessary condition to the consummation of the loan, which for that reason was never made, the broker was entitled to his commissions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 92–96.]

Appeal from Trial Term.

Action by Sigmund Neftelberger against James E. Garner. From a judgment for defendant and from an order denying plaintiff's motion for a new trial, he appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles L. Hoffman, for appellant.
James L. Curtis, for respondent.

INGRAHAM, J. The complaint alleges that the defendant requested one Finck to procure for him a loan of $6,000 to be secured by a second mortgage upon certain real property of the defendant, for which the defendant promised to pay Finck 15 per cent. of the amount of such loan, besides disbursements and recording taxes; that said Finck complied with the said agreement on his part, and did thereafter pro-

cure an absolute acceptance of the defendant's application for a loan, and did procure a person ready, willing, and able to make such loan to the defendant upon the terms prescribed in the agreement; that at a time fixed for the closing of the said loan there were various prior liens against the premises to be mortgaged aggregating the sum of $4,000; that the defendant failed, neglected, and refused to satisfy said liens, and failed and refused to accept the loan so procured by Finck solely because of the existence of such liens against the said premises; that there became due to the plaintiff for disbursements $139.10 and his commissions under the agreement of $900; and that Finck had assigned his claim to the plaintiff. The answer was a general denial. The case was tried before a jury who found a verdict for the defendant, and from the judgment thereon the plaintiff appeals.

The agreement, which was in the form a letter written by the defendant to the plaintiff, was introduced in evidence. By it the plaintiff was authorized to accept on behalf of the defendant a second mortgage at 6 per cent. for two years covering the property of the defendant subject to a first mortgage of $10,000; and the defendant agreed to pay 15 per cent. of the loan, disbursements, and recording tax. It was there proved that Finck, or his representative, procured an acceptance of the loan from one Sulzberger; that Finck's representative saw the defendant personally, and received from him the deed of property and also a policy of title insurance at the same time the defendant was notified that the loan was accepted. The parties met at Sulzberger's office on August 7, 1907, when the loan was to be closed and the mortgage executed and delivered; that at that time Sulzberger read off from a search a list of judgments and liens upon the property, and then said that there was not money enough to satisfy these judgments and liens; that the defendants refused to do anything regarding the judgments, admitting that some of them were against him. Nothing was done, and the defendant and his attorney left. Sulzberger testified that he was an attorney at law; that a client of his was willing to make the loan and directed him to examine the title; that upon an examination of the title he found that there was an outstanding second mortgage against the property for $5,000 upon which something had been paid. and other liens, and subsequently the defendant left the office, and that was the end of the transaction. The plaintiff having rested, the defendant was called as a witness. He testified: That he went to Finck's office, and Finck asked him if Mr. Handy had explained the proposition: That the defendant said:

"Yes; Mr. Handy went over the whole thing with me, and I thoroughly understand it that you are to loan me $6,000, providing I can raise $1,500."

That Finck then said:

"Sign an application for this money."

That the witness said he would not pay any disbursements or any appraisement, only the 15 per cent. which was enough for the whole expenses. That Finck said, "Well, all right," and the defendant signed the application and went away. That he went to Sulzberger's office on the 7th of August, and Finck was not there. That he said that he did not know Sulzberger, and Sulzberger told him that there was about

$7,500 in liens on the property, and that could not come out of the $5,100 which was the amount of the loan, less the 15 per cent. for disbursements. That the defendant did not know Sulzberger in the transaction. That he came to meet Finck. That he then refused to have anything more to do with Sulzberger, and left. That he had $1,500 with him at the time. He does not seem to have disputed the fact that there were $7,500 of liens on the property, and as he was to receive but $5,100 for the loan, even if he had $1,500 in his pocket, that would not have been sufficient to clear off the liens so as to make the mortgage good. When asked by the court why he did not pay off these judgments, and take a satisfaction of the judgments instead of the cash, he answered that he did not have money enough; that he wanted to get the mortgage and pay off; that it was his object in raising the mortgage to pay off these judgments. He did not seem to understand that judgments against the former owner of the property were liens upon the property.

At the end of all of the testimony plaintiff's counsel moved for the direction of a verdict in favor of the plaintiff, when the defendant said he wanted to go to the jury on the question of fact whether there was any contract or not, whether the minds of the parties met. He claimed that there was a false and fraudulent representation made by Finck to the defendant, and that the minds of the parties never met in this contract. There was no such defense pleaded or proved; but the court denied the motion, and the plaintiff excepted. The court charged the jury that the defendant had testified that he had money enough with him to meet the difference between the amount of the loan and the amount of the mortgages or liens against the property, which was a manifest mistake, and then left it to the jury to say whether there was a sufficient justification for not putting the loan through; that if they found that the plaintiff's assignor, Finck, found a person able, ready, and willing to make the loan in question, and at the time fixed for closing on the 7th of August the person he so employed was ready, able, and willing to make the loan, and if they also find that he had informed Mr. Garner that Mr. Sulzberger had been engaged to effect the loan, then as a matter of law that the plaintiff was entitled to recover the full amount of $900 and interest. I am inclined to think that the plaintiff was entitled to the direction of a verdict as the evidence now stands. The evidence of the employment was undisputed. The evidence that Sulzberger had agreed to make the loan, that he had in his possession the money to make it, and that the parties called at his office on the 7th of August to close the transaction is undisputed. That there were liens on the property exceeding the amount of the loan and the amount of money that the defendant had in his possession is undisputed, and it seems to me that Finck performed the services that he was engaged to perform and was entitled to the agreed compensation; but, if there was any question to submit to the jury, it seems to me that the plaintiff was entitled to have the jury instructed that if Finck had procured a person who was ready, able, and willing to make the loan, and the defendant was at the place when the transaction was to be closed, and either refused or was unable to comply with the necessary condi-

tions to enable the loan to be consummated, then plaintiff was entitled to recover.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.